IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :        CASE NO. 09-08645
                                                :
COOP DE CONSUMIDORES DEL                        :
NOROESTE                                        :        CHAPTER 7
                                                :
        Debtor                                  :
                                                :
_____        :

OPINION AND ORDER

This case is before the court upon the request by Trafon Group, Inc., formerly known as Encinal, Inc. d/b/a Starmeat (hereafter referred to as "Trafon" or "Creditor") for payment of amounts owed, claiming to be the beneficiary of a statutory trust under the  Packers and Stockyards Act of 1921, as amended ("PASA"). The Chapter 7 Trustee (hereinafter referred to as "Trustee") opposed the request and filed a motion for summary judgment alleging that Trafon failed to comply with certain requirements that must be concurrently satisfied under the PASA provisions, 7 U.S.C. §196, mainly; (i) Trafon is not a livestock and/or live poultry cash seller in conformity with 7 U.S.C. §196(b) and §197(d); and (ii) Trafon failed to preserve its statutory trust due to its lack of notification to the Debtor and to the Secretary of the United States Department of Agriculture within the mandatory time frame (within the thirty day period of the final date established for making payment to the cash seller of livestock) in conformity with 7 U.S.C. §§196(b) and 197(d), and 9 C.F.R. §203.15 (Docket No. 295). Trafon filed its opposition to the Trustee's motion for summary judgment arguing the following: (i) whether Trafon sold "livestock" as defined under PASA to Debtor is a genuine issue of material fact that precludes the granting of Trustee's motion for summary judgment; (ii) Trafon preserved its trust under 7 U.S.C. §228(b), given that this section, "...allows for the parties to effect payment in another manner so long as the parties expressly agree in writing;" (iii) "[i]n the case at hand, the parties agreed that the seller retains a trust claim over the commodities sold until full payment is received.  All the invoices at issue specifically stated: '[t]he seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities and any receivables or proceeds from the sales of these commodities and any

receivables or proceeds from the sales of these commodities until full payment is received;" and (iv) "[c]onsidering that it was stipulated on the invoices that the seller retains a trust claim over the commodities sold 'until full payment is received,' such provision constitutes an agreement to make payment in another manner. In the present case, the thirty days of the final date for making payment began when the Debtor filed Bankruptcy and Trafon was put on notice that they will not receive payment." (Docket No. 329). The Trustee filed his reply to Trafon's opposition to the motion for summary judgment (Docket Nos. 332 & 341). For the reasons set forth below the Trustee's motion for summary judgment is hereby granted.

Facts and Procedural Background

Cooperativa de Consumidores del Noroeste filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on October 9, 2009. The Debtor included Trafon (Star Meat Inc.) in Schedule F (Creditors Holding Unsecured Nonpriority Claims) as an unsecured creditor in the amount of $46,505.80. The Debtor included in line item number four (4) of its Statement of Financial Affairs a lawsuit for collection of money in the state court of Aguadilla (Case No. A1CI2009-00872) in which Trafon Group Corp. H/N/C Starmeat is the plaintiff. On October 19, 2009, the Trustee filed a Notice of Assets and Request for Claims Bar Date informing that there are assets in this case which are expected to result in a dividend to creditors, and requested the Clerk of the Court to set and notice a bar date for filing claims (Docket No. 6). On October 27, 2009, the Clerk of the Court gave notice to creditors informing that assets have been recovered by the Trustee and that creditors must file a proof of claim by January 25, 2010 (Docket No. 11). The 341 meeting of creditors was scheduled for November 4, 2009 and was continued and held on December 1, 2009. The Trustee requested that the case be held open for potential asset recovery (Docket Nos. 4, 23 & 42). On January 29, 2010, Trafon filed proof of claim #126-1 for an unsecured claim in the amount of $46,456.12 which was incurred from March 27, 2009 to May 13, 2009.

On October 25, 2010, Trafon filed a motion requesting the Trustee to pay the invoices owed. Trafon alleges that it is a PASA trust beneficiary based on the following: (i) that during the period of March 27, 2009 through May 12, 2009 it supplied livestock, livestock products, poultry and poultry products to the Debtor; (ii) on January 29, 2010, Trafon filed a proof of claim in the amount of

$46,456.12 for unpaid invoices of which it claims $41,776.33 is protected by PASA, and as a beneficiary of the PASA statutory trust, it has priority over creditors and over lenders to which packers have given a security interest in packer's inventory and receivables subject to such trust; and (iii) Safeway Stores, Inc. v. Freeman, 369 F. 2d. 952 (D.C. Cir. 1966), recognized that retail stores such as the one debtor operated where meat and meat products are processed for sale are considered "packers" within the meaning of PASA (Docket No. 212).

The Chapter 7 Trustee (hereinafter referred to as "Trustee") filed on October 26, 2010 his opposition to Trafon's Motion Requesting Order Instructing the Trustee to Pay PASA Trust Beneficiary presenting the following arguments: (i) the proof of claim filed by Trafon (claim #126-1) specified that it was an unsecured creditor and it failed to specify that it was protected by the PASA trust; (ii) Trafon is commencing a proceeding pursuant to Fed. R. Bankr. P. 7001(1), (2) and (9), thus these actions must be initiated by an adversary proceeding; (iii) Debtor is not a "packer" as defined by 7 U.S.C. §191[1], and thus Trafon does not have a valid PASA trust claim; (iv) Safeway Stores, Inc. v. Freeman, 369 F. 2d. 952, is distinguishable from the instant case due to the specifics of the operations and processing activities of the Safeway supermarket chains; (v) Trafon fails to describe the actual activity Debtor engaged in which is within the scope of PASA; and (vi) the products Trafon sold to Debtor were already processed when they arrived at Debtor's stores as evidenced by the invoices (Docket No. 216).

On November 22, 2010, Trafon filed its reply to the Trustee's opposition to its motion requesting an Order instructing the Trustee to pay it as a PASA trust beneficiary, arguing the following: (i) that pursuant to the case of In re Frosty Morn Meat, Inc., 7 B.R. 988 (Bankr. M.D. Tenn. 1980) an adversary proceeding is not required to adjudicate whether Trafon's claim is protected by a PASA trust; (ii) the Trustee's emphasis on the case of D &W Food Centers, Inc. v. Block, 786

---

[1] Section 201 of PASA provides, "[w]hen used in this Act [7 USCS §§181 et seq.] the term "packer" means any person engaged in the business (a) of buying livestock in commerce for purposes of slaughter, or (b) manufacturing or preparing meats or meat food products for sale or shipment in commerce, or (c) of marketing meats, meat food products, or livestock products in an unmanufactured form acting as a wholesale broker, dealer, or distributor in commerce." 7 U.S.C. §191.

F. 2d 751 (6th Cir. 1986) is misguided because that decision was rendered based on the particular facts of that case which are different from the facts in the instant case; (iii) the nature of the Debtor's operation is important to determine whether it is a "packer" under PASA, thus an evidentiary hearing may be necessary for the court to adjudicate whether Debtor is a packer under the PASA provisions; and (iv) Debtor "...engages in the processing of products beyond 'those needed to prepare them for display'" (Docket No. 216, paragraph #32) since Debtor cuts and repackages the meat and meat products it receives from Trafon (as shown in the photographs enclosed as Exhibits 1-8 in Docket No. 230) into smaller portions for re-sale to third parties (Docket No. 230).

On December 1, 2010, the Trustee filed a motion for leave to file sur-reply and extension of time due to the following: (i) the transactions that give rise to this claim originated when the Debtor was under its original administration which was subsequently substituted by Corporación Pública para la Supervisión y Seguro de las Cooperativas de Puerto Rico ("COSSEC") in June 2009; and (ii) the Trustee will request the dismissal of this action because the original administrator and COSSEC are not part of this proceeding as required by Fed. R. Civ. Proc. 12 & 19 (Docket No. 235). On December 2, 2010, this court granted the Trustee's request for a thirty (30) day extension to file his sur-reply to Trafon's reply to the Trustee's opposition (Docket No. 239). On December 30, 2010, the Trustee filed its sur-reply arguing the following: (i) an adversary proceeding should be initiated pursuant to Fed. R. Bankr. P. 7001(1), (2) and (9) to obtain a declaratory judgment on the validity of Trafon's claim regarding the legal existence of the alleged PASA trust; (ii) the factual and legal circumstances in In re Frosty Morn Meat, Inc., 7 B.R. 988 differ significantly from the present case, given that; (a) the adversary proceeding in the case of reference was brought forth as a class action; (b) both parties had stipulated facts and briefs of law regarding the statutory trust and specific amounts for claims under 7 U.S.C. §196; and (c) a trust had already been established; (iii) Trafon fails to describe the actual activity that would place Debtor within the scope of PASA; (iv) Debtor clarifies that no "manufacturing or preparing of meat or meat product" was ever carried out within its market facilities; (v) contrary to what Trafon has stated in their reply, Trustee does not admit that Debtor was engaged in "some processing of the products" (Docket No. 216, paragraph 32). The actual sentence was, "[a]s this Honorable court can notice there was little or no process of the products except for

4

those needed to prepare them for display;" (vi) "...Trafon would cut, pack and deliver the meat straight to each of Debtor's individual supermarket facilities from which in turn Debtor would sell the meat and meat products solely and directly to consumers, not to other retail stores, market establishments and/or institutions," contrary to the provisions of 7 U.S.C. §191(c) which require that a "packer" act as a wholesale broker, dealer or distributor in commerce; (vii) "...Debtor's operations in no way or form consisted in 'functions ordinarily carried out by wholesalers.' Creditor Trafon would cut, weigh, pack and deliver meat, meat products, poultry, and poultry products directly to each of Debtor's individual supermarket facilities, and such merchandise, if at all altered by Debtor, would be in a minimal manner and solely for purposes of display to their visiting customers who are the ultimate consumers;" (viii) the invoices provided by Trafon evince that the produce sold were not livestock, carcasses or raw products in conformity with the definition of livestock under PASA, 7 U.S.C. §182(4)[2]; (ix) the PASA trust applies if the following requirements have been concurrently satisfied: (a) the commodities sold are "livestock" as defined in PASA; (b) the purchaser of the livestock is a "packer" as defined in PASA; (c) the transaction is a cash sale; (d) the cash sellers have not received full payment for their livestock; (e) the packer in question makes average annual purchases of more than $500,000; and (f) the cash sellers have preserved the trust within the required period by giving notice to the packer and by filing that notice with the Secretary of Agriculture; (x) Trafon has failed to provide evidence of compliance with the United States Department of Agriculture's requirements regarding the issuance of bonds and registration as required by the corresponding regulations, 9 C.F.R. §201; and (xi) Trafon has failed to provide evidence of the required notice of intent to preserve the statutory trust which should have been filed with the Secretary of Agriculture or with the nearest Packers and Stockyards regional office pursuant to 7 U.S.C. §196(b)[3] (Docket No. 260).

---

[2] Section 2 defines "livestock" as, "[t]he term "livestock means cattle, sheep, swine, horses, mules, or goats whether live or dead." 7 U.S.C. §182(4).

[3]Section 206 regarding the statutory trust provides,
"(a) *Protection of public interest from inadequate financing arrangements.* It is hereby found that a burden on and obstruction to commerce in livestock is caused by financing

5

On January 18, 2011 a hearing was held in which the court delineated the issues of the instant case as follows: (1) is Trafon a packer as defined by PASA?; (2) if so, was the trust adequately preserved by the required notice?; and (3) if the trust was properly created and preserved, who has the responsibility to pay and preserve the trust? The court also ordered the pre-trial to be scheduled for late June or mid July 2011 (Docket No. 270). On March 2, 2011, the pre-trial conference was scheduled for July 29, 2011 (Docket No. 293).

On March 3, 2011, the Trustee filed a motion for summary judgment alleging the following: (i) "...not all packers are subject to the packer trust—only those that have purchased livestock in a cash sale basis are obligated to retain all livestock purchased by them, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, for the benefit of all unpaid cash sellers of such livestock;" citing 7 U.S.C. §196(b); (ii) Trafon is not

---

arrangements under which packers encumber, give lenders security interest in, or place liens on, livestock purchased by packers in cash sales, or on inventories of or receivables or proceeds from meat, meat food products, or livestock products therefrom, when payment is not made for the livestock and that such arrangements are contrary to the public interest. This section is intended to remedy such burden on and obstruction to commerce in livestock and protect the public interest.

(b) *Livestock, inventories, receivables and proceeds held by packer in trust for benefit of unpaid cash sellers; time limitations; exempt packers; effect of dishonored instruments; preservation of trust benefits by seller.* All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers: *Provided*, That any packer whose average annual purchases do not exceed $500,000 will be exempt from the provisions of this section. Payment shall not be considered to have been made if the seller receives a payment instrument which is dishonored: *Provided*, That the unpaid seller shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within thirty days of the final date for making a payment under section 409 [7 USCS §228b], or within fifteen business days after the seller has received notice that the payment instrument promptly presented for payment has been dishonored, the seller has not preserved his trust under this subsection. The trust shall be preserved by giving written notice to the packer and by filing such notice with the Secretary."

(c) Definition of cash sale. For the purpose of this section, a cash sale means a sale in which the seller does not expressly extend credit to the buyer." 7 U.S.C. §196.

6

a livestock and/or live poultry cash seller in conformity with 7 U.S.C. §196(b) and §197(d); (iii) all invoices and photographic exhibits filed by Trafon evince that Debtor never purchased "livestock" or "live poultry" as defined by PASA's statutory trust provisions, namely 7 U.S.C. §§ 182(4), 191(b), (c), 196, thus a PASA trust was never created; (iv) the invoices demonstrate that the merchandise sold to Debtor by Trafron "...was not livestock nor live and/or whole poultry, but chicken legs, chicken thighs, pork chops, sliced hams, grouper filets, turkey tenderloins, etc., which arrived adequately processed and packaged directly to each of Debtor's retail supermarket facilities;" (v) even if this court determines that a PASA trust was established, Trafon failed to preserve its trust due to lack of notification to the Debtor and to the Secretary of the United States Department of Agriculture within the mandatory time frame (within the thirty day period of the final date established for making payment to the cash seller of livestock) in conformity with 7 U.S.C. §§196(b) and 197(d), and 9 C.F.R. §203.15; (vi) the last invoice sent to Debtor was dated May 13, 2009 and payment of the same was due on June 12, 2009, but written notification was provided by Trafon to Debtor and to GIPSA's Eastern Regional Office on November 5, 2009 (Docket No. 295).

On March 17, 2011, Trafon filed a motion requesting an extension of time to file its opposition to the Trustee's motion for summary judgment due to the complex nature of the subject matter raised by the Trustee in its motion for summary judgment and the extensive legal research the same requires (Docket No. 304). On March 18, 2011, the court granted the motion filed by Trafon requesting an extension of time to file its response to the Trustee's motion for summary judgment (Docket No. 305). On April 7, 2011, Trafon filed its Opposition to the Trustee's Motion for Summary Judgment based upon the following: (i) the Trustee's allegations of uncontested facts should be denied for failure to comply with Fed. R. Civ. P. 56(b) since he failed to file a separate statement of material facts and many of his alleged uncontested facts are not supported by record citations in conformity with Fed. R. Civ. P. 56(b) and (e) and/or do not reference to the specific page or paragraph of the identified record material supporting the assertion; (ii) case law has recognized that retail stores, such as the one Debtor operated where meat and meat products are processed for sale are considered "packers" pursuant to PASA citing Safeway Stores, Inc. v. Freeman, 369 F. 2d. 952; United States of America v. Jay Freeman Co., 473 F. Supp. 1265 (E.D. Ark. 1979); (iii) "Trustee's

7

claim that little to no processing of the product has to be done by Debtor, not only has no basis on record, but is clearly controverted by the material facts of this case;"(Docket No. 329, paragraph 36); (iv) an evidentiary hearing is needed to determine how much processing and preparation of the sold items was made by Debtor; (v) whether Trafon sold "livestock" as defined under PASA to Debtor is a genuine issue of material fact that precludes the granting of Trustee's motion for summary judgment; (vi) "[i]t should be clarified that Trafon's argument is not that a 'PASA trust is created anytime meat or meat products are sold to a packer' as argued by the Defendants in Stanziale, supra, but that most of the products it sold to Debtor fall under the definition of 'livestock' under the PASA" (Docket No. 329, paragraph 41); (vii) Trafon preserved its trust under 7 U.S.C. §228(b), because this section "...allows for the parties to effect payment in another manner so long as the parties expressly agree in writing;" (viii) "[i]n the case at hand, the parties agreed that the seller retains a trust claim over the commodities sold until full payment is received. All the invoices at issue specifically stated: '[t]he seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities and any receivables or proceeds from the sales of these commodities until full payment is received" (Docket No. 329, paragraph 44); and (ix) "[c]onsidering that it was stipulated on the invoices that the seller retains a trust claim over the commodities sold 'until full payment is received', such provision constitutes an agreement to make payment in another manner. In the present case, the thirty days of the final date for making payment began when Debtor filed Bankruptcy and Trafon was put on notice that they will not receive payment." (Docket No. 329, paragraph 45).

On April 14, 2011, the Trustee filed a motion for leave to file reply accompanied by his Reply to Trafon's opposition to the motion for summary judgment (Docket No. 332). The Trustee in the reply brings forth the following arguments: (i) the prompt payment provisions under PASA, 7 U.S.C. §228(b) permit livestock buyers and sellers to agree, expressly in writing to waive the seller's right to the next day cash payment for livestock; (ii) if a packer or a live poultry dealer fails to make payments as prescribed under the PASA provisions, the sellers and poultry growers in order to preserve the PASA statutory trust must file a timely written notice to the packer and/or live poultry dealer and with the Secretary of Agriculture, both within thirty (30) days of the final date established

for making payment to the cash seller of livestock pursuant to 7 U.S.C. §§196(b) and 197(d) and 9 C.F.R. §203.15; (iii) Trafon, "...pretends to misguide this Honorable Court into considering the disclaimer included in each of the Invoices sent to Debtor, as the type of 'written agreement' prescribed by the statute under 7 U.S.C. §228(b) available for parties who wish to change the terms of payment under PASA trust provisions;" and (iv) in the instant case the last invoice sent to Debtor was dated May 13, 2009 and was due on June 12, 2009, given that the same had a "net 30 day" payment term, but written notification was sent on November 5, 2009, almost five (5) months after payment on the last invoice was due (Docket No. 332-1). On May 3, 2011, the court granted the Trustee's request for leave to file a reply to Trafon's opposition to his summary judgment (Docket No. 335). Subsequently, on May 10, 2011, the Trustee filed a reply to Trafon's opposition to his motion for summary judgment which is identical to the one he previously filed on April 14, 2011 (Docket No. 341).

Legal Issues

In the instant case, the following issues are in controversy: (i) whether the Debtor is a "packer" as defined by PASA; (ii) whether the commodities sold to the Debtor by Trafon are "livestock" as defined by PASA; (iii) whether the transactions that took place between Debtor and Trafon are "cash sales" under PASA; and (iv) whether Trafon, as a cash seller, preserved its trust within the required period by giving notice to the packer and by filing notice with the Secretary of Agriculture both within thirty (30) days of the final date established for making payment to the cash seller of livestock. The Trustee in its motion for summary judgment argues that irrespective of whether Debtor is indeed a "packer" under the PASA provisions, Trafon failed to preserve its statutory trust pursuant to 7 U.S.C. §§196(b), 197(d) and 9 C.F.R. §203.15. At this juncture, this court finds that for the first two issues require an evidentiary to determine whether the Debtor is a "packer" and whether the commodities sold to Debtor by Trafon are "livestock" under the PASA provisions. However, the court finds that the last two issues can be adjudicated from the documents presented and from the uncontested material facts. Such adjudication warrants the entry of a decision in favor of the Trustee as a matter of law.

<u>Uncontested Material Facts</u>

1.  During the period ranging from March 27, 2009 through May 12, 2009, Trafon, formerly known as Encinal, Inc., d/b/a Starmeat, supplied Debtor with meat, meat products, poultry, and poultry products by delivering said merchandise directly to each of Debtor's individual supermarket facilities (Docket Nos. 332-1, 341, Claim No. 126).

2.  As the meat and poultry products were being shipped, invoices were regularly sent by Trafon to Debtor from March 27, 2009 up until May 13, 2009 (Docket Nos. 332 & 341, Claim No. 126).

3.  All invoices at issue specifically stated: "[t]he perishable agricultural or meat commodities listed on this invoice are sold subject to statutory trust authorized by Section 5(C) of the Perishable Agricultural Commodities Act, 1930 (7 USC 499e(c)), or under the Packers and Stockyard Act, (7 USC Sec 18), as the case may be. The seller of these commodities retains a trust claim over these commodities, all inventories of food or other food products derived from these commodities and any receivables or proceeds from the sales of these commodities until full payment is received." (Docket No. 332-1 & 341, Claim No. 126).

4. Debtor filed a petition under Chapter 7 of the Bankruptcy Code on October 9, 2009.

5.  Trafon sent notices of non-compliance to Debtor and the United States Department of Agriculture on November 5, 2009, stating to retain a trust claim over all commodities, and inventories derived therefrom, that had been sold to Debtor under the PASA provisions.

6.  On January 18, 2010, Trafon sent a letter to the Trustee, through its attorney, claiming to be a cash seller of livestock and therefore a PASA trust beneficiary over all livestock (as well as inventories and receivables derived therefrom) allegedly sold to Debtor (Docket Nos. 332-1 & 341).

7. On January 29, 2010, Trafon filed proof of claim No. 126-1 debt incurred from 03/27/2009 to 05/13/2009 in the amount of $46,456.12. Trafon listed the entire amount of the debt as unsecured. (Claims Register, claim no. 126-1).

*Standard for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure 3d§ 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir.

11

1991).  It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.  Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case.  Celotex, 477 U.S. at 325.  See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11.  In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment.  Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987).  See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464.  A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party.  Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made.  López, 938 F.2d at 1517.  The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

Applicable Law and Analysis

*Packards and Stockyards Act of 1921, as amended, 7 U.S.C. §181 et seq.*

PASA was designed to ensure fair and effective competition and fair trade in livestock, meat, and poultry markets. PASA has two basic purposes, namely; (i) to safeguard farmers and ranchers against receiving less than the true market value of their livestock by ensuring prompt payment; and (ii) to protect producers and consumers by prohibiting monopolistic or predatory practices. See Christopher R. Kelley, *An Overview of the Packers and Stockyards Act,* An Agricultural Law Research Article, (April 2003), at http://www.nationalaglawcenter.org/assets/articles/kelley_packers;

12

10-71 Agricultural Law §71.08 (2011).  PASA aims at insuring the integrity of livestock and poultry marketing transactions.

Section 206(b) of PASA, 7 U.S.C. §196(b), provides that;

> "*Livestock, inventories, receivables and proceeds held by packer in trust for benefit of unpaid cash sellers; time limitations; exempt packers; effect of dishonored instruments; preservation of trust benefits by seller*. All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers: *Provided*, That any packer whose average annual purchases do not exceed $500,000 will be exempt from the provisions of this section. Payment shall not be considered to have been made if the seller receives a payment instrument which is dishonored: *Provided, That the unpaid seller shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within thirty days of the final date for making a payment under section 409 [7 U.S.C.S. §228b], or within fifteen business days after the seller has received notice that the payment instrument promptly presented for payment has been dishonored, the seller has not preserved his trust under this subsection. The trust shall be preserved by giving written notice to the packer and by filing such notice with the Secretary."* 7 U.S.C. §196(b). (*Emphasis ours)

Section 206 of PASA limits the application of its statutory trust provisions specifically to transactions in which all of the following conditions are satisfied: (1) the commodities sold are "livestock" pursuant to 7 U.S.C. §182; (2) the purchaser of the livestock is a packer as defined in 7 U.S.C. §191; (3) the transaction is a "cash sale"; (4) the cash sellers have not received full payment for their livestock; (5) the packer in question makes average annual purchases of more than $500,000; and (6) the cash sellers have preserved the trust within the required period by giving notice to the packer and by filing that notice with the Secretary of Agriculture. See In re Gotham Provision Co., 669 F. 2d 1000, 1004 (5th Cir. 1982)("Where each of these conditions has been satisfied, the packer is required to hold in trust for the benefit of unpaid cash sellers any livestock purchased in cash sales, inventories of meat or other products derived from such livestock, and accounts receivables or proceeds obtained through the sale of these items by the packer"); Stanziale v. Rite Way Meat Packers, Inc. (In re CFP Liquidating Estate), 405 B.R. 694, 696-697 (Bankr. D. Del. 2009).

One of the critical issues in the instant case is whether the sale transactions that were generated from March 27, 2009 to May 13, 2009 between Trafon and Debtor are "cash sales" within the PASA provisions. In order for the PASA statutory trust to be created the livestock must be

13

purchased by a packer in "cash sales." See In re G&L Packing Co., 41 B.R. 903, 914 (N.D.N.Y.) ("The trust created Section 206 of the Packers & Stockyards Act is operative only for 'livestock purchased by a packer in 'cash sales'"). Section 206(c) of PASA defines a cash sale of livestock as, "...a sale in which the seller does not expressly extend credit to the buyer." 7 U.S.C. §196(c).

Section 206 must be read in conjunction with the prompt payment provisions for purchase of livestock under Section 409 of PASA, 7 U.S.C. §228b,[4] which require that purchasers of livestock pay the seller the full amount of the purchase price before the close of the next business day following the purchase and transfer of possession of the livestock, or if the transaction is based on a "grade and yield" basis, before the close of the next business day, following the determination of the purchase price. Sellers of livestock may sell to a packer on credit, provided that the parties expressly agree in writing to a credit arrangement in conformity with Section 409(b) of PASA, 7 U.S.C. §228b(b)[5] and

---

[4] Section 409 of PASA provides;

"*Prompt payment for purchase of livestock*. (a) *Full amount of purchase price required; methods of payment*. Each packer, market agency, or dealer purchasing livestock shall, before the close of the next business day following the purchase of livestock and transfer of possession thereof, deliver to the seller or his duly authorized representative the full amount of the purchase price: *Provided*, That each packer, market agency, or dealer purchasing livestock for slaughter shall, before the close of the next business day following purchase of livestock and transfer of possession thereof, actually deliver at the point of transfer of possession to the seller or his duly authorized representative a check or shall wire transfer funds to the seller's account for the full amount of the purchase price; or, in the case of a purchase on a carcass or 'grade and yield' basis, the purchaser shall make payment by check at the point of transfer of possession or shall wire transfer funds to the seller's account for the full amount of the purchase price not later than the close of the first business day following determination of the purchase price: *Provided further*, That if the seller or his duly authorized representative is not present to receive payment at the point of transfer of possession, as herein provided, the packer, market agency or dealer shall wire transfer funds or place a check in the United States mail for the full amount of the purchase price, properly addressed to the seller, within the time limits specified in this subsection, such action being deemed compliance with the requirement for prompt payment." 7 U.S.C. §228b(a).

[5] Section 409(b) provides; "*Waiver of prompt payment by written agreement; disclosure requirements*. Notwithstanding the provisions of subsection (a) of this section and subject to such terms and conditions as the Secretary may prescribe, the parties to the purchase and sale of livestock may expressly agree in writing, before such purchase or sale, to effect payment in a manner other

14

C.F.R. §201.200. Once a seller of livestock has sold (livestock) on credit to a packer, the seller waives the statutory trust protection afforded by PASA. "In essence, §409 of the Act presumes that all livestock sales are cash sales unless the parties expressly agree in writing to make the transaction a credit sale. Read, in this context, the language of §206 defining 'cash sales' to include all sales where the seller has not expressly extended credit contemplates that unless the parties clearly agree in writing to a credit arrangement, the transaction is a cash sale." In re Gotham Provision Co., 669 F. 2d at 1005. Thus, a packer may purchase livestock on credit, but it must make sure the seller waives its right to prompt payment in writing.  Moreover, 9 C.F.R. §201.200: *Sale of livestock to a packer on credit,* specifically provides the acknowledgment required if a packer buys livestock on credit; which provides the following:

> "(a) No packer whose average annual purchases of livestock exceed $500,00 shall purchase livestock on credit, and no dealer or market agency acting as an agent for such a packer shall purchase livestock on credit, unless: (1) Before purchasing such livestock the packer obtains from the seller a written acknowledgment as follows:

>> On this date I am entering into a written agreement for the sale of livestock on credit to _____, a packer, and I understand that in doing so I will have no rights under the trust provisions of section 206 of the Packers and Stockyards Act, 1921, as amended (7 U.S.C. 196, Pub. L. 94-410), with respect to any such credit sale. The written agreement for such selling on credit

>> Covers a single sale.

>> Provides that it will remain in effect until (date).

>> Provides that it will remain in effect until canceled in writing by either party.

>> (Omit the provisions not applicable.)

>> Date _____

>> Signature_____

> (2) Such packer retains such acknowledgment, together with all other documents, if any, setting forth the terms of such credit sales on which the purchaser and seller have agreed, and such dealer or market agency retains a copy thereof, in his records for such time as is required by any law, or by written notice served on such person by the Administrator, but not less than two calendar years from the date of expiration of the written agreement referred to in such acknowledgment; and

than that required in subsection (a). Any such agreement shall be disclosed in the records of any market agency or dealer selling the livestock, and in the purchaser's records and on the accounts or other documents issued by the purchaser relating to the transaction." 7 U.S.C. §228b(b).

15

(3) Such seller receives a copy of such acknowledgment.

(b) Purchasing livestock for which payment is to be made by a draft which is not a check, shall constitute purchasing such livestock on credit within the meaning of paragraph (a) of this section. (See also §201.43(b)(1).)" 9 C.F.R. §201.200.

Accordingly, the sale of livestock constitutes a "cash sale" unless the seller has signed a credit arrangement in conformity with 9 C.F.R. §201.200 indicating that the same is a credit sale and, thus, waiving its statutory trust rights. See Hedrick v. S. Bonaccurso & Sons, Inc., 466 F. Supp. 1025, 1032 (E.D. Pa. 1978) ("The regulations support the Court's interpretation of 7 U.S.C. §228b that nothing but an express agreement in writing can operate as a waiver of the seller's right to next day cash payment for livestock."); 10-71 Agricultural Law §71.08 ("Nothing but an express agreement in writing can operate as a waiver of the seller's right to next day cash payment for livestock. An implied agreement or a course of dealing which delays in payment have been tolerated by the livestock seller are not sufficient to constitute an extension of credit within the meaning of the Act– only 'an express agreement in writing' will suffice"). Any delay in payment or attempt to delay the collection of funds by a packer is considered an "unfair practice" pursuant to 7 U.S.C. §228b(c).[6] In the instant case, neither the Debtor or Trafon have presented as a supporting document in their motion for summary judgment or in its opposition to Debtor's motion for summary judgment a written acknowledgment by which Trafon expressly acknowledged that it sold on credit to Debtor in conformity with 9 C.F.R. §201.200. PASA requires that this credit agreement must be disclosed in the records of the buyer of livestock and in the records of the market agency or dealer selling the livestock pursuant to 7 U.S.C. §228b(b).

In view of the foregoing, this court finds that in the instant case, the invoices with a payment term of "net 30 days" fail to constitute an express extension of credit in conformity with 7 U.S.C.

---

[6] Section 409(c) provides: "*Delay in payment or attempt to delay deemed unfair practice.* Any delay or attempt to delay by a market agency, dealer, or packer purchasing livestock, the collection of funds as herein provided, or otherwise for the purpose of or resulting in extending the normal period of payment for such livestock shall be considered an 'unfair practice' in violation of this Act [7 USCS §§181 et seq.]. Nothing in this section shall be deemed to limit the meaning of the term 'unfair practice' as used in this Act [7 USCS §§181 et seq.].

16

§228b(b) and 9 C.F.R. §201.200 because they fail to include the express intention of the parties to enter into a credit agreement and the intention of Trafon to waive the protection of the PASA statutory trust provisions.

PASA was amended in 1987 to protect contract poultry growers under the Poultry Producers Financial Protection Act of 1987. The provisions of the Poultry Producers Financial Protection Act of 1987 are similar to the provisions of PASA that protect livestock sellers. Section 207 of PASA, 7 U.S.C. §197(b), (c) and (d) is the corresponding provision for the statutory trust established for unpaid cash sellers of poultry or poultry growers.[7] For unpaid cash sellers or poultry growers a cash sale under Section 207(e) of PASA is defined as, "...a sale in which the seller does not expressly extend credit to the buyer." 7 U.S.C. 197(e). Section 207 must be read in conjunction with the prompt

---

[7] Section 207 of PASA provides;

"(b) *Poultry, inventories, receivables and proceeds held by dealer in trust for benefit of unpaid cash sellers or poultry growers*. All poultry obtained by a live poultry dealer, by purchase in cash sales or by poultry growing arrangement, and all inventories of, or receivables or proceeds from such poultry or poultry products derived therefrom, shall be held by such live poultry dealer in trust for the benefit of all unpaid cash sellers or poultry growers of such poultry, until full payment has been received by such unpaid cash sellers or poultry growers, unless such live poultry dealer does not have average annual sales of live poultry, or average annual value of live poultry obtained by purchase or by poultry growing arrangement, in excess of $100,000." 7 U.S.C. §197(b).

"(c) *Effect of dishonored instruments*. Payment shall not be considered to have been made if the cash seller or poultry grower receives a payment instrument which is dishonored." 7 U.S.C. §197(c).

"(d) *Preservation of trust benefit by seller or poultry grower*. The unpaid cash seller or poultry grower shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within 30 days of the final date for making payment under section 410 [7 USCS §228b-1], or within 15 business days after the seller or poultry grower has received notice that the payment instrument promptly presented for payment has been dishonored, the seller or poultry grower has not preserved his trust under this section. The trust shall be preserved by giving written notice to the live poultry dealer and by filing such notice with the Secretary." 7 U.S.C. §197(d).

payment provisions under Section 410 of PASA, 7 U.S.C. §228b-1[8] which require that full payment is due "before the close of the next business day following the purchase of poultry," in the case of a cash sale, or before the close of the fifteenth day following the week in which the poultry is slaughtered, in the case of poultry obtained under a poultry growing arrangement. All poultry sales are considered to be cash sales unless there is an express extension of credit by the poultry seller or a growing arrangement contract in place. The court need adjudicate whether the sales of poultry are considered cash sales pursuant to Sections 207 and 410, 7 U.S.C. §§197 & 228b-1, because the parties have not expressed their positions with respect to this particular issue, and may have waived their right to do so.

*Requirements for the Preservation of Statutory Trust under PASA*

The second issue in the instant case is whether Trafon properly preserved its rights in the assets of the statutory trusts by filing a timely written notice to the packer and/or live poultry dealer and with the Secretary of Agriculture giving notice to the Secretary of Agriculture, both within thirty (30) days of the final date established for making payment to the cash seller of livestock and/or

---

[8] Section 228b-1 of PASA provides;
"*Final date for making payment to cash seller or poultry grower.*
*(a) Delivery of full amount due.* Each live poultry dealer obtaining live poultry by purchase in a cash sale shall, before the close of the next business day following the purchase of poultry, and each live poultry dealer obtaining live poultry under a poultry growing arrangement shall, before the close of the fifteenth day following the week in which the poultry is slaughtered, deliver, to the cash seller or poultry grower from whom such live poultry dealer obtains the poultry, the full amount due to such cash seller or poultry grower on account of such poultry.

(b) *Delay or attempt to delay collection of funds as "unfair practice."* Any delay or attempt to delay, by a live poultry dealer which is a party to any such transaction, the collection of funds as herein provided, or otherwise for the purpose of or resulting in extending the normal period of payment for poultry obtained by poultry growing arrangement or purchased in a cash sale, shall be considered an 'unfair practice' in violation of this Act [7 USCS §§181 et seq.]. Nothing in this section shall be deemed to limit the meaning of the term 'unfair practice' as used in this Act [7 USCS §§181 et seq.].

(c) Definition of cash sale. For the purpose of this section, a cash sale means a sale in which the seller does not expressly extend credit to the buyer." 7 U.S.C. §228b-1.

18

poultry in conformity with 7 U.S.C. §§196(b), 197(d) and 9 C.F.R. §203.15.

Section 206(b) provides in pertinent part;

"[t]hat the unpaid seller shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within thirty days of the final date for making a payment under section 409 [7 U.S.C.S. §228b], or within fifteen business days after the seller has received notice that the payment instrument promptly presented for payment has been dishonored, the seller has not preserved his trust under this subsection. The trust shall be preserved by giving written notice to the packer and by filing such notice with the Secretary." 7 U.S.C. §196(b).

Section 207(d) provides;
"[t]he unpaid cash seller or poultry grower shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within 30 days of the final date for making payment under section 410 [7 USCS §228b-1], or within 15 business days after the seller or poultry grower has received notice that the payment instrument promptly presented for payment has been dishonored, the seller or poultry grower has not preserved his trust under this section. The trust shall be preserved by giving written notice to the live poultry dealer and by filing such notice with the Secretary." 7 U.S.C. §197(d).

The corresponding regulations provide the following;

"*Trust benefits under sections 206 and 207 of the Act*. (a) Within the times specified under sections 206(b) and 207(d) of the Act, any livestock seller, live poultry seller or grower, to preserve his interest in the statutory trust, must give written notice to the appropriate packer or live poultry dealer and file such notice with the Secretary. One of the ways to satisfy the notification requirement under these provisions is to make certain that notice is given to the packer or live poultry dealer within the prescribed time by letter, mailgram, or telegram stating:

(1) Notification to preserve trust benefits;
(2) Identification of packer or live poultry dealer;
(3) Identification of seller or poultry grower;
(4) Date of the transaction;
(5) Date of seller's or poultry grower's receipt of notice that payment instrument has been dishonored (if applicable); and
(6) Amount of money due; and to make certain that a copy of such letter, mailgram, or telegram is filed with a GIPSA Regional Office or with GIPSA, USDA, Washington, DC, 20250, within the prescribed time.

(b) While the above information is desirable, any written notice which informs the packer or live poultry dealer and the Secretary that the packer or live poultry dealer has failed to pay is sufficient to meet the above-mentioned statutory requirement if it is given within the prescribed time." 9 C.F.R. §203.15

In the instant case, Trafon notified Debtor and the United States Department of Agriculture, Grains Inspection Packers and Stockyards Administration via fax and by certified mail on November 5, 2009. In said letter, Trafon stated the following;

"Under the credit terms between Trafon Group, Inc., and Debtor, Trafon Group, Inc., retained a trust claim over all commodities and their inventories derived from the

19

commodities and any receivables or proceeds from the sales of the commodities until full payment was received.

Trafon Group Inc., has requested the Debtor the payment of fifty seven invoices of which forty-three invoices contain commodities and meat products which [a]mount to $43,585.19.  As of this date we have not yet received payment. Therefore under the Packers and Stockyards Act, hereinafter PSA U.S.C.. Sec. 18, consider this letter our formal complaint.

Enclosed you will find a detailed report which only reflect the invoices that contain meat products and other commodities and their totals. Also enclosed are copies of all the invoiced owed." (Docket No. 295, Exhibit A).

Trafon's certified letter was received by Regina Willis on November 12, 2009. The court notes that Trafon's letter refers to the  "credit terms between Trafon Group, Inc., and Debtor" with respect to the alleged statutory trust rights Trafon claims it has under PASA. The court finds that the language making reference to "credit terms" is contrary to the requirement that the transactions have to be "cash sales" in order to be afforded the statutory trust protection under the PASA. The court also notes that more than two (2) years have lapsed since the United States Department of Agriculture received this notice.

Trafon argues that it preserved its trust under 7 U.S.C. §228(b) due to the following: (i) 7 U.S.C. §228(b) "...allows for the parties to effect payment in another manner so long as the parties expressly agree in writing;" (ii) "[i]n the case at hand, the parties agreed that the seller retains a trust claim over the commodities sold until full payment is received.  All the invoices at issue specifically stated: '[t]he seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities and any receivables or proceeds from the sales of these commodities until full payment is received" (Docket No. 329, paragraph 44); and (iii) "[c]onsidering that it was stipulated on the invoices that the seller retains a trust claim over the commodities sold 'until full payment is received', such provision constitutes an agreement to make payment in another manner.

Trafon alleges that the thirty days of the final date for making payment began when Debtor filed Bankruptcy and Trafon was put on notice that they will not receive payment. (Docket No. 329, paragraph 45). Trafon argues that by disclosing certain language on all of the invoices constitutes by itself (i) an agreement to make payment in another manner, the final date for all the invoices at issue

20

was thirty (30) days after Debtor filed for bankruptcy and; (ii) that such language on the invoice serves to preserve PASA's statutory trust.

The language on Trafon's invoice is as follows:

"[t]he perishable agricultural or meat commodities listed on this invoice are sold subject to statutory trust authorized by Section 5(C) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)), or under the Packers and Stockyards Act, (7 U.S.C. Sec. 18), as the case may be. The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities and any receivables or proceeds from the sales of these commodities until full payment is received."

The language on Trafon's invoice invokes the statutory trust protections under the Perishable Agricultural Commodities Act of 1930, as amended, (hereinafter referred to as "PACA"), 7 U.S.C. §499a *et seq*. PACA was amended in 1984 to create a statutory trust over any goods, receivables, or proceeds from perishable agricultural commodities until the buyer makes full payment. 7 U.S.C. §499e(c). However, if the seller fails to satisfy the statutory trust requirements, the PACA trust will not be perfected. Under PACA, payment is generally due within ten (10) days after shipment is received pursuant to 7 C.F.R. §46.2(aa)(5)[9], but parties may extend the time period for payment up to thirty (30) days without waiving the PACA statutory trust protection. 7 C.F.R. §46.2(aa)(11)[10] &

---

[9] 7 C.F.R. §46.2(aa)(5) provides: "[f]ull payment promptly is the term used in the Act in specifying the period of time for making payment without committing a violation of the Act. "Full payment promptly," for the purpose of determining violations of the Act, means:
> (5) Payment for produce purchased by a buyer, within 10 days after the day on which the produce is accepted." 7 C.F.R. §46.2(aa)(5).

[10] 7 C.F.R. §46.2(aa)(11) provides in pertinent part: [f]ull payment promptly is the term used in the Act in specifying the period of time for making payment without committing a violation of the Act. "Full payment promptly," for the purpose of determining violations of the Act, means:
> (11) Parties who elect to use different times of payment than those set forth in paragraphs (aa)(1) through (10) of this section must reduce their agreement to writing before entering into the transaction and maintain a copy of the agreement in their records. If they have so agreed, then payment within the agreed upon time shall constitute 'full payment promptly', Provided, That the party claiming the existence of such an agreement for time of payment shall have the burden of proving it." 7 C.F.R. §46.2(aa)(11).

21

7 C.F.R. §46.46(e)(2). Parties who establish a payment term of thirty (30) days must have a written agreement before entering this transaction and must maintain a copy of this agreement in their records pursuant to 7 C.F.R. §46.46(e)[11]. Moreover, PACA requires that "the times of payment must be disclosed on the invoices, accountings, and other documents relating to the transaction." 7 C.F.R. §46.46(e).

PACA was amended in 1995 to allow sellers to preserve their statutory trust benefits on billing statements or invoices by including the language provided by 7 U.S.C. §499e(c)(4)[12]. However,

---

[11] 7 C.F.R. §46.46(e) provides: "*Prompt payment and eligibility for trust benefits.* (1) The times for prompt accounting and prompt payment are set out in §46.2(z) and (aa). Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

(2) The maximum time for payment for a shipment to which a seller, supplier, or agent can agree, prior to the transaction, and still be eligible for benefits under the trust is 30 days after receipt and acceptance of the commodities as defined in §46.2(dd) and paragraph (a)(1) of this section.

(3) If there is a default in payment as defined in §46.46(a)(3), the seller, supplier, or agent who has met the eligibility requirements of paragraphs (e)(1) and (2) of this section will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment." 7 C.F.R. §46.46(e)(1), (2), & (3).

[12] 7 U.S.C. §499e(c) provides: "*Trust on commodities and sales proceeds for benefit of unpaid suppliers, sellers, or agents; preservation of trust; jurisdiction of courts.*
(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association, as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), and its members.

(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier,  seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

(4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following:

> 'The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products

23

including this particular language on the invoices is not enough to preserve the PACA statutory trust benefits. "In order to preserve PACA benefits by including this specified notice, sellers must also (1) be licensed under PACA, 7 U.S.C. §499e(c)(4); and (2) if the parties have expressly agreed in writing to a payment period different than the 10-day period provided by the Regulations, the seller must also include the terms of payment on the invoice" See A.J. Rinella & Co. v. Bartlett (In re Bartlett), 367 B.R. 21, 30 (Bankr. D. Mass. 2007); 7 U.S.C. §§499e(c)(3), (4); 7 C.F.R. §46.46(f)(3)[13].

The court notes that all of Trafon's invoices incorrectly cite to the Packers and Stockyards Act of 1921, as amended, which is 7 U.S.C. §181 et seq., and not 7 U.S.C. §18. The language included in the invoices in controversy is the language which the Perishable Agricultural Commodities Act of

---

derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.'

(5) The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust." 7 U.S.C. 499e(c).

[13] 7 C.F.R. §46.46(f)(3) provides: "(3) Licensees may choose an alternate method of preserving trust benefits from the requirements described in paragraphs (f)(1) and (2) of this section. Licensees may use their invoice or other billing statement as defined in paragraph (a)(5) of this section, whether in documentary or electronic form, to preserve trust benefits. Alternately, the licensee's invoice or other billing statement, given to the buyer, must contain:

(i) The statement. 'The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.;' and

(ii) The terms of payment if they differ from prompt payment set out in section 46.2(z) and (aa) of this part, and the parties have expressly agreed to such terms in writing before the affected transactions occur." 7 C.F.R. §46.46(f)(3).

24

1930, as amended,  provides to unpaid licensees to preserve the PACA statutory trust pursuant to 7 U.S.C. §499e(c)(4). PASA does not have a provision similar to the PACA provision,7 U.S.C. §499e(c)(4), by which a cash seller must include a particular language in the invoices to preserve the statutory trust. Thus, Trafon's reliance on the language included in its invoice under PACA is misplaced as to its claim of having a statutory trust under PASA.  Moreover, under PACA, 7 U.S.C. §499e(c)(4) and its pertinent regulations, 7 C.F.R. §46.46(e) require that for a PACA trust to be perfected, parties that establish a payment term of thirty (30) days must have a written agreement before entering these transactions and must maintain a copy of such agreement and the seller must include the payment terms on the invoice. Consequently, even if the PACA provisions were applicable to the instant case, the statutory trust would not have been perfected because the written agreement entered into by the parties to the transaction has not been provided.

This court finds that the payment term for the invoices in controversy is clearly indicated on each invoice, given that each invoice indicated an invoice date, a payment term of "net 30 days" and the "invoice due" date. The payment term is thirty (30) days from the invoice date and corresponds to the invoice due date, contrary to Trafon's allegation that the thirty days of the final date for making payment began when Debtor filed Bankruptcy and Trafon was put on notice that they will not receive payment. Thus, the notice mailed to the Secretary was made after the thirty (30) day statutorily required period from the "invoice due" dates of all the invoices. The invoice due dates were from April 26, 2009 to June 12, 2009.

In view of the foregoing, this court concludes that Trafon failed to preserve its alleged statutory trust benefits under PASA, 7 U.S.C. §§196(b), 197(d) and 9 C.F.R. §203.15, because it failed to file a timely written notice to the alleged packer (Debtor) and to the Secretary of the United States Department of Agriculture within the required thirty (30) days of the final payment date included in all the invoices in controversy as the "Invoice Due" date.

Conclusion

The court finds and concludes that the invoices presented to this court with a payment term of "net 30 days" fail to constitute an express extension of credit in conformity with 7 U.S.C. §228b(b) and 9 C.F.R. §201.200 because they fail to include the express intention of the parties to enter into

a credit agreement and the intention of Trafon to waive the protection of the PASA statutory trust provisions. The court further finds that Trafon failed to preserve its alleged statutory trust benefits pursuant to the PASA provisions, 7 U.S.C. §§196(b), 197(d) and 9 C.F.R. §203.15. Thus, Trafon does not have a statutory trust under 11 U.S.C. §541(d) which excludes those assets in the trust from the debtor's estate. The amounts claimed by Trafon in the proof of claim are not subject to a PASA statutory trust.

In view of the foregoing, the Trustee's motion for summary judgment is hereby GRANTED.

SO ORDERED.

In San Juan, Puerto Rico, this 12th day of January 2012.

Enrique S. Lamoutte
United States Bankruptcy Court